YOUNG, Appellant,

v.

WASHINGTON LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, Appellee.

[Cite as *Young v. Washington Local School Dist.
Bd. of Edn.* (1993), 85 Ohio App.3d 37.]

Court of Appeals of Ohio,
Scioto County.

No. 2045.

Decided Jan. 7, 1993.

*Cloppert, Portman, Sauter, Latanick & Foley* and *Michael J. Hunter,* for appellant.

*Means, Bichimer, Burkholder & Baker Co., L.P.A.,* and *Kimball H. Carey,* for appellee.

GREY, Judge.

This is an appeal from the Scioto County Court of Common Pleas. The court affirmed the decision of the Washington Local School District Board of Education ("the board") not to renew Young's teaching contract. We affirm.

Kim Young taught Spanish in the Washington Local School District under a limited contract for a period of three years. During the final year, he was evaluated on three occasions. The evaluations consisted of an in-class observation followed by a written report. After the third report, the principal told the superintendent that he recommended non-renewal of Young's contract. The superintendent forwarded this recommendation to the board and they elected not to renew the contract.

Upon notification of the board's decision, Young requested a written statement from the board about the circumstances of his termination. The board sent the statement to Young indicating that it was being provided pursuant to R.C. 3319.11 and the memorandum of agreement indicating from the beginning the board's position that it was proceeding under the contract. After receiving the statement, Young requested a hearing before the board pursuant to R.C. 3319.11, indicating his position that the statute, not the contract, was controlling. At the hearing, the matter proceeded as provided for in the contract, *e.g.,* Young was permitted to present his side. He was not permitted to introduce witnesses or to cross-examine his evaluators, as he would have been under R.C. 3319.11(G)(5).

The board affirmed its prior decision and Young filed an appeal with the Scioto County Court of Common Pleas. The court upheld the decision of the school board finding, oddly enough, that the board had complied with the statute.

Young appeals, designating five assignments of error.

First Assignment of Error

"The non-renewal of Appellant Young is in error because his evaluations were not each proceded [*sic*] by at least two classroom observations."

Second Assignment of Error

"The evaluations are not in compliance with law because they fail to make specific recommendations for improvement and do not suggest means for obtaining assistance."

Third Assignment of Error

"Appellant Young should have been deemed reemployed because of deficiencies in the evaluation procedure."

Fourth Assignment of Error

"The school board's written statement of circumstances leading to intended non-renewal is not sufficient under the statute."

Fifth Assignment of Error

"Appellant was entitled to a full evidentiary hearing, including the right to subpoena and examine witnesses."

■ We shall treat these assignments of error jointly because they are all facets of the same underlying question. Does a public employee collective bargaining agreement have a *status quo* carryover period?

It is well established that the terms of collective bargaining agreement under R.C. Chapter 4117 may be different from the provisions of a statute relating to the same matter. In the event of a conflict, the terms of the agreement supersede the statutory provision. *Cuyahoga Falls Edn. Assn. v. Cuyahoga*

*Falls City School Dist. Bd. of Edn.* (1991), 61 Ohio St.3d 193, 574 N.E.2d 442; *State ex rel. Rollins v. Cleveland Hts.-University Hts. Bd. of Edn.* (1988), 40 Ohio St.3d 123, 532 N.E.2d 1289, citing *Jurcisin v. Cuyahoga Cty. Bd. of Elections* (1988), 35 Ohio St.3d 137, 143, 519 N.E.2d 347, 353.

It is also clear that public employee collective bargaining agreements are contracts and are subject to the common law of contracts much as any contract is. A basic rule of contract law is that a contract expires on the express date of termination in the contract. This principle was, tacitly, the basis for the decision in *Ohio Assn. of Pub. School Emp. v. New Miami Local Bd. of Edn.* (1986), 31 Ohio App.3d 163, 31 OBR 328, 509 N.E.2d 973. In that case, the board had agreed, under the contract, to deduct union dues from employees wages, but when the contract ended on December 31, 1984, the board stopped doing so. The Twelfth District Court of Appeals held that a party cannot be compelled to perform on a contract after it has ended and the New Miami board clearly indicated its intention not to be bound by the agreement any longer.

The contract here lapsed on August 1, 1990, prior to Young's final year. During that time, the teachers worked without a contract, and on April 26, 1991 Young received his termination letter. He argues that after the lapse, R.C. 3319.111 became the applicable law of the case and thus his termination had to be done in accord with the statutory procedures. The board argues that although the contract was not formally renewed, both parties continued to operate under the terms of the old contract as it related to salaries, benefits, etc., and thus they had the right to use the termination procedure set out in the contract.

Young asserts in his five assignments of error that R.C. 3319.111(B) is controlling and since the review procedure did not meet the stricter requirements of R.C. 3319.111(B), the proper remedy is reemployment for an additional year. The board argues that, since the teachers were under contract, R.C. 4117.10(A) is applicable and, as long as the board acted within the scope of the contract, no error occurred.

In reality, this court is being called on to make a policy decision. Often a collective bargaining agreement ends while the parties are still negotiating, and the effect to be given to a public employee collective bargaining agreement during this period ought to be decided by the legislature. This court is not, nor is even the Supreme Court, if this case goes up on appeal, the proper forum for such a policy decision.

We are, nonetheless, charged with resolving disputes and applying the common law. It is a long-established rule, and a good one, that where a contract ends but the parties continue to act according to its terms, they are deemed to have acquiesced in all of the terms of a contract. For example, where a tenant under a written lease holds over beyond the term in the lease, and the landlord accepts

rent from the holdover tenant, the law presumes a lease for another term and includes all the conditions to which the parties previously agreed, maintaining the *status quo.* We see no reason why this rule would not apply to public employee collective bargaining agreements.

▪ Applying the common law of contracts to this case, we find that where both parties to a public employee collective bargaining agreement continue to operate as if there were a contract, and neither party breaches or indicates its intention to no longer be bound, then the *status quo* continues. We also hold that since the terms of a collective bargaining agreement, entered into under R.C. Chapter 4117, prevails over conflicting law unless it falls within one of the exceptions listed in R.C. 4117.10(A), the conflicting contract terms would prevail during this carryover period.

We can find no case dealing with a public employee collective bargaining agreement, but in reviewing a lapsed, private collective bargaining contract, on the question of the union members' entitlement to unemployment benefits, the Supreme Court discussed the *status quo* test in *Bays v. Shenango Co.* (1990), 53 Ohio St.3d 132, 559 N.E.2d 740:

" ' * * * [W]here employees offer to continue working under the terms of a pre-existing collective bargaining agreement pending final settlement of a labor dispute, the failure of the employer to accept such an offer constitutes a lockout unless it is demonstrated that the employer has a compelling reason for failing to so agree such that the extension of the contract would be unreasonable under the circumstances.' " *Id.* at 135, 559 N.E.2d at 743, citing *Oriti v. Bd. of Review* (1983), 7 Ohio App.3d 311, 7 OBR 394, 455 N.E.2d 720.

"The status-quo test requires that actions of both the employer and the union be scrutinized in order to ascertain whether the parties sought to maintain the status quo. 'Since the purpose of our unemployment compensation system is to compensate an individual when work has been denied him through no fault of his own, logically the test of whether a work stoppage resulted from a strike or a lock-out requires us to determine which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing.' *Philco Corp. v. Unemp. Comp. Bd. of Review* (1968), 430 Pa. 101, 103, 242 A.2d 454, 455." *Bays, supra* [53 Ohio St.3d], at 135, 559 N.E.2d at 743. See, also, *Erie Forge & Steel Corp. v. Unemp. Comp. Bd. of Review* ('Vrotney Unemployment Compensation Case') (1960), 400 Pa. 440, 443–445, 163 A.2d 91, 93–94.

Applying the *status quo* test of *Bays,* we find that both sides followed the previous contract for a rather lengthy period. The *status quo* was maintained and the teachers and the board both received the benefits of the old contract.

The contract was not breached or expressly terminated and remained in effect. Therefore, the termination provisions of the lapsed, but still valid contract, are superior to R.C. 3319.111. *Rollins, supra.*

We note here the problems involved if we were to rule the other way. It is common for public employers and unions to renegotiate minor details of an agreement as the time for renewal approaches although the basic agreement is acceptable. If we hold that on the day of expiration everything automatically reverts to the statutory scheme, that means everything has to be renegotiated. One can easily imagine a situation where one day the contract applies, and then the next day the statute applies, and then a week later the contract applies again. This would be a chaotic and unworkable situation.

Nothing in our opinion, of course, should be construed to hold that a public employee collective bargaining agreement does not expire on the date called for in the contract. These contracts are not self-perpetuating or automatically renewable beyond their term. However, where both parties elect to follow the terms of the prior contract, and neither party indicates expressly or by conduct that it will no longer be bound by the previous agreement, then the previous contract will be enforced in its entirety.

We turn now to examine the record to see if the termination procedures used by the board in considering Young's case were proper.

The contract addendum, referred to as a "Memorandum of Understanding," states:

"The Washington Local School District Board of Education ('Board') and the Washington Local Classroom Teachers Association/OEA ('Union') agree to the following as an addendum to their labor contract (expiration: August 1, 1990):

"For the 1989–90 school year, all teacher evaluations shall be conducted in accordance with the mutually-satisfactory contractual 'Teacher Evaluation' provision and none of the requirements contained in O.R.C. 3319.111 shall be applicable, except that the Board will provide the teacher a written statement describing the circumstances that led to the board's intention not to reemploy the teacher as set forth in the O.R.C. 3319.11G.

"The Board's noncompliance with the evaluation procedures contained in O.R.C. 3319.111 shall not constitute a basis for a challenge of the legality of a nonrenewal of a teacher's limited contract or extended limited contract occurring during the 1989–90 school year."

There is nothing in the record to show that the board did not evaluate Young according to the terms of the contract.

Young's first, second, third, fourth and fifth assignments of error are not well taken and are overruled.

*Judgment affirmed.*

HARSHA and PETER B. ABELE, JJ., concur.